UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

D.L., individually and
on behalf of R.T.,
a child with a disability,

**COMPLAINT**

*Plaintiff,*

-against-

Case No. 1:25-CV-10315

NEW YORK CITY
DEPARTMENT OF EDUCATION,

*Defendant.*

---

1.     Parent-Plaintiff D.L., individually and on behalf of R.T., by and through her attorneys, Cuddy Law Firm, P.L.L.C., brings this action against the New York City Department of Education ("DOE") pursuant to the provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, as well as New York State Education Law ("NY Educ. L."), §§ 4401, 4404, and Part 200 of the Regulations of the New York State Commissioner of Education, 8 N.Y.C.R.R. §§ 200 *et seq.*, to review the final administrative decisions of an Impartial Hearing Officer ("IHO") and a New York State Review Officer ("SRO") regarding the provision of a free appropriate public education ("FAPE") for her son, R.T., a student with a disability.

2.     D.L. seeks funding for R.T.'s benefit, in the amounts of:

    a.     The DOE shall fund R.T.'s tuition directly to Gersh Academy ("Gersh") for the twelve-month 2024-2025 school year, in the total amount of $175,506.00 (minus any payments already made by the Parent to Gersh and/or payments made by the DOE under pendency), and provide specialized transportation including the needed one-to-one ("1:1")

bus paraprofessional, limited travel time, route with fewer students, and door-to-door transportation.

b.      The DOE shall reimburse the Parent in the amount of $100.00 for the Parent's payment to Gersh on or about June 10, 2024.

3.      This action is brought to seek reversal of:

a.      those portions of the IHO's unfavorable final decision, dated January 5, 2025, that were not reversed by the SRO's decision, dated August 14, 2025.

## JURISDICTION AND VENUE

4.      Jurisdiction is predicated upon 28 U.S.C. § 1331, which provides the district courts with original jurisdiction over all civil actions arising under the laws of the United States, as well as upon 20 U.S.C. § 1415(i)(2), without regard to the amount in controversy.

5.      Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of Defendant.

## PARTIES

6.      D.L and R.T. reside in Queens County, State of New York.

7.      D.L. is the biological mother of R.T., who was born in 2014.

8.      D.L. is R.T.'s "parent" as defined by the IDEA.

9.      Defendant DOE has classified R.T. with Autism since 2019.

10.     Defendant DOE is a "local educational agency" as defined by the IDEA.

11.     In its capacity as a "local educational agency" under the IDEA, DOE is a recipient of federal funding.

12.     DOE has duties and obligations to students with disabilities, under and consistent with the IDEA, Articles 52-A and 89 of the New York State Education Law, and Federal and New York State regulations promulgated under those laws.

13.     DOE's principal place of business is located at 52 Chambers Street, New York, NY 10007.

## FACTUAL BACKGROUND

14.     D.L. and R.T reside within the DOE.

15.     DOE is the district of Plaintiff's residence.

16.     At all times, DOE has been responsible for the provision of a FAPE to R.T.

17.     R.T., nine to ten years old during the at-issue time period and nine during his hearing, is a student whose ability to participate in conventional academic programs is hindered by his conditions of autism (with accompanying intellectual impairment and accompanying language impairment – Level 3 "Requiring very substantial support"), Attention-Deficit/Hyperactivity Disorder, Combined Presentation ("ADHD"); and Unspecified Disruptive, Impulse-Control, and Conduct Disorder ("Conduct Disorder").

18.     R.T. is currently enrolled in a private school, Gersh Academy ("Gersh"), which R.T. has attended since September 2021.

19.     Prior to attending Gersh, DOE placed R.T. at Public School 229 ("P.S. 229"), a DOE District 75 ("D75") school.

20.     Pursuant to Final Orders dated January 24, 2022 (IHO Case No. 218006), October 27, 2022 (IHO Case No. 229318), and November 8, 2023 (IHO Case No. 251277), IHOs ordered the DOE to fund R.T.'s tuition at Gersh for the 2021-2022, 2022-2023, and 2023-2024 school years.

21.     In the November 8, 2023, Final Order (IHO Case No. 251277), in addition to ordering the DOE to fund R.T.'s tuition at Gersh for the 2023-2024 school year, the IHO also ordered the DOE to reevaluate R.T. in all areas of suspected disability and, upon completion of those evaluations, reconvene the DOE's Committee on Special Education ("CSE"), to determine what, if any, modifications needed to be made to the R.T.'s individualized education program ("IEP").

22.    Following the November 8, 2023, Final Order, the only evaluation the DOE conducted was a psychoeducational evaluation on March 8, 2024, by Dr. Susan Hirtz, DOE school psychologist.

23.    On April 12, 2024, the DOE held an IEP meeting and developed an IEP for the 2024-2025 school year. The sole DOE evaluation the DOE conducted, and reviewed, by the time of the April 12, 2024, IEP meeting was Dr. Hirtz's March 2024 psychoeducational evaluation report.

24.    At no time prior to the April 12, 2025, IEP meeting did the DOE provide the Parent with a copy of the March 2024 psychoeducational evaluation report.

25.    In addition to the March 2024 psychoeducational evaluation noting R.T.'s aggressive behavior, the April 12, 2024, IEP noted R.T.'s challenges, difficulties and behavioral issues, such as tantrums, screaming, crying, throwing himself on the floor, biting his arm, scratching and mouthing his shirt.

26.    The April 12, 2025, IEP also noted that R.T. benefited from being in a small group, worked best in a quiet environment and required a one-one-one paraprofessional to keep him safe when exhibiting maladaptive behaviors.

27.    Despite the DOE's indications in the April 12, 2024, IEP that R.T. needed support in multiple areas, including, but not limited to, social-emotional and behavioral, the DOE disregarded the Parent's request for a school that utilized the Applied Behavioral Analysis ("ABA") research-based method of instruction.

28.    The Parent's request to the DOE for an ABA program was well supported by information provided from R.T.'s school, Gersh. For example, per the January 17, 2024, Gersh Academic Annual Review, "R.T. requires ABA methodologies throughout the day in all settings to be successful in achieving his goals…He requires ABA and discrete trial teaching, along with

frequent prompting, redirection, and reinforcement to help him learn… These recommendations are respectfully submitted to the [DOE]."

29.    The DOE had absolutely no information and/or data to refute and/or discount R.T.'s need for an ABA program, at the time of the April 12, 2024, IEP meeting or thereafter, and the DOE also did not recommend an alternative methodology.

30.    On April 16, 2024, the Parent sent a letter to the DOE, expressing disagreement with the DOE's reevaluation process of R.T., and requested an independent educational evaluation ("IEE"), at public expense, in the areas of Neuropsychological, Speech-Language ("SL"), Assistive Technology ("AT"), Occupational Therapy ("OT"), Physical Therapy ("PT") and an ABA skills assessment.

31.    The DOE did not respond to the Parent's April 16, 2025, IEE letter. For example, the DOE neither ensured the IEE was provided at public expense nor filed a due process complaint to request a hearing to show that its evaluation was appropriate.

32.    On May 20, 2024, Brian Serrao, unit coordinator at Public School 209 ("P.S. 209"), a D75 school, contacted the Parent to inform her that the DOE proposed P.S. 209 as a placement for R.T. for the 2024-2025 school year.

33.    On May 24, 2024, the DOE sent the Parent a Prior Written Notice ("PWN") and a School Location Letter ("SLL").

34.    The Parent toured P.S. 209 on June 12, 2024. During her tour, the Parent learned that P.S. 209 did not meet her son's needs, did not have the proper, trained staff, and was not appropriate placement for R.T.

35.    For example, Mr. Serrao during the P.S. 209 tour on June 12, 2024, Mr. Serrao informed the Parent during the tour that P.S. 209 did not utilize ABA and did not have a Board-Certified Behavior Analyst ("BCBA") on staff.

36.    During the P.S. 209 tour on June 12, 2024, the Parent learned that P.S. 209 had over 100 students and was very loud during the morning and during lunchtime.

37.    During the P.S. 209 tour on June 12, 2024, the Parent expressed her concerns regarding R.T.'s sensory processing to Mr. Serrao. Mr. Serrao responded to the Parent that it was unclear to him why the DOE would recommend P.S. 209 for R.T., rather than a non-public school.

38.    On June 21, 2024, the Parent, through counsel, emailed a timely Ten-Day Notice ("TDN") letter to the DOE.

39.    The Parent's June 21, 2024, TDN letter detailed her concerns with the DOE's offered placement at P.S. 209, including, among other things, the statements made by Mr. Serrao.

40.    For example, the Parent's June 21, 2024, TDN letter stated, "I visited the class, which, according to Mr. Serrao, would be [R.T.'s] class for the 2024-2025 school year if [R.T.] attended school there. Mr. Serrao informed me that the students are mostly taught daily living skills and very little academic skills are taught. Mr. Serrao informed me that the school does not offer any transitional support services for students transitioning from a private school, and it would be up to the teacher to provide [R.T.] with transitional supports, if any. When I asked Mr. Serrao what, if any, behavior was available for [R.T.] at P.S. 209, Mr. Serrao replied only that the class has a separate small room, where in the case of maladaptive behaviors, [R.T.] would be taken to this small room and a staff member would try to calm him down. Mr. Serrao made no mention of any positive behavioral interventions utilized at P.S. 209. Additionally, according to Mr. Serrao, there are over 100 students in the school and, in the morning and at lunchtime, students share the

cafeteria with the regular education students and it gets crowded in there. I expressed my concerns to Mr. Serrao regarding the loud cafeteria due to my son's sensitivity to the noise and his sensory processing delays. Mr. Serrao responded that would be an issue because it does get very loud in the cafeteria. Mr. Serrao also commented he was unsure why the DOE was recommending P.S. 209, a District 75 school, rather than non-public school, given that [R.T.] currently attends a private placement." The Parent's TDN letter expressed her disagreement with and rejection of the DOE's offered placement at P.S. 209 for the then-upcoming 2024-2025 school year. The Parent's TDN letter informed the DOE that, absent an appropriate program and placement recommendation by the DOE, she intended to continue R.T.'s placement at Gersh for the 12-month 2024-2025 school year, which began in July 2025.

41.    Prior to the start of the 12-month 2024-2025 school year, the DOE did not respond to the Parent's June 21, 2024, TDN letter.

42.    Even after the start of the 12-month 2024-2025 school year, the DOE did not respond to the Parent's June 21, 2024, TDN letter.

43.    For example, in response to the Parent's June 21, 2024, TDN letter, the DOE did not convene an IEP meeting, or any type of meeting, to discuss the Parent's concerns with P.S. 209 and did not contact the Parent to inform her that anything that Mr. Serrao told her during the P.S. 209 tour was untrue or not fully accurate.

44.    Having received no information from the DOE regarding her concerns with, disagreement with, and rejection of P.S. 209, on July 15, 2024, the Parent unilaterally placed R.T. at Gersh for the twelve month 2024-2025 school year.

45.     On July 24, 2024, Plaintiff D.L., through counsel, submitted a Demand for a Due Process Hearing (a/k/a, due process complaint) on behalf of her child, R.T., alleging a denial of a free appropriate public education ("FAPE") for the 2024-2025 school year.

46.     This case was assigned Impartial Hearing Office Case Number 283527.

47.     Dawn Reid-Green was appointed as the IHO for Case Number 283527.

48.     Pendency was stipulated upon between the parties on August 26, 2024, which consisted of Gersh tuition and specialized transportation.

49.     Impartial hearings were held on October 16, 2024, and November 13, 2024.

50.     On January 5, 2025, the IHO issued the Final Order

51.     IHO Reid-Green's January 5, 2025 Final Order found: (a) the IHO found that the DOE provided R.T. with FAPE for the 2024-2025 school year, therefore dismissing the Parent's claim; and (b) the IHO, found that R.T. is entitled to an IEE in the Parent's requested areas: neuropsychological, speech-language ("S/L"), occupational therapy ("OT"), physical therapy ("PT"), assistive technology ("AT"), and an ABA skills assessment.

52.     On January 10, 2025, Plaintiff D.L., through counsel, served a notice of intention to seek review on the DOE.

53.     On January 21, 2025, the DOE served a notice of intention to cross-appeal on Plaintiff D.L., through counsel, purporting the DOE was going to cross-appeal, among other things, the IHO ordering an IEE.

54.     Plaintiff D.L., through counsel, submitted emails to the DOE's Implementation Unit on January 10, 2025, and January 21, 2025, requesting the DOE authorize funding for the ordered IEEs.

55.    On January 22, 2025, the DOE's Implementation Unit indicated it would not authorize funding for an IEEs due to pending appeal.

56.    On February 11, 2025, Plaintiff D.L., through counsel, served the DOE with its appeal to the New York Office of State Review ("SRO") and filed her appeal with the SRO.

57.    Plaintiff D.L. appealed from the IHO's January 5, 2025, Final Order on the issues that the IHO erred in:

a.    The IHO erred in finding that the DOE provided the Student with FAPE for the 2024-2025 school year.

b.    The IHO erred in finding that the 4/12/24 IEP was appropriate and erred in relying on the DOE's witnesses' testimonies to support the 4/12/24 IEP's appropriateness.

c.    The IHO erred in finding that the 4/12/24 IEP was appropriate despite the DOE's failure to recommend a researched-based method of instruction (i.e., ABA) despite ample evidence of R.T.'s need for such a program.

d.    The IHO erred in disregarding the DOE's failure to provide the Parent with the psychoeducational evaluation report.

e.    The IHO erred in finding the 4/12/24 IEP provided a FAPE when the DOE relied on an inappropriate DOE reevaluation in developing the IEP, as the IHO found the DOE reevaluation was no appropriate and ordered an IEE as a result.

f.    The IHO erred in disregarding the DOE's failure to respond to the Parent's June 21, 2023, TDN letter and erred in permitting the DOE's witnesses' retrospective testimonies.

g.    The IHO erred in not ordering Other Requested Relief. Specifically, the IHO erred in not ordering the 4/12/24 IEP mandated transportation.

     h.   The IHO's legal analysis was so critically flawed that she failed to award appropriate relief, including R.T.'s Gersh tuition for the 12-month 2024-2024 school year.

58.    The DOE's Answer and cross-appeal was originally due by no later than February 19, 2025.

59.    On February 11, 2025, the DOE submitted a "Request for Extension of Time" to the SRO. Requesting the SRO grant an extension of time, with no reason given, to serve and/or File its Answer and cross-appeal until March 5, 2025.

60.    On February 13, 2025, the SRO granted the DOE's "Request for an Extension of Time," making the DOE's Answer and cross-appeal due March 5, 2025. The SRO noted, "The Decision Due Date for the State Review Officer's decision is extended to 30 days from receipt of the Answer and Cross Appeal, provided that if such date falls on a Saturday, Sunday, or legal holiday, the decision shall be due the following business day."

61.    On March 4, 2025, the DOE served and filed its "Verified Answer" to Plaintiff D.L.'s SRO appeal, arguing:

     a.   The DOE offered D.L. a FAPE for the 2024-2025 school year.

     b.   The DOE's proposed placement for the 204-2025 school year, P.S. 209, was appropriate.

     c.   The DOE has complied with the pendency agreement.

62.    The DOE did not serve and/or file a cross-appeal.

63.    It was not until March 6, 2025, after the DOE's deadline to file a cross-appeal had passed, that the DOE's Implementation Unit authorized funding for an IEE in each area ordered by IHO Reid-Green in the January 5, 2025, Final Order.

64.    Due to the DOE's claim that it would file a cross-appeal the IEE issue, which the DOE never filed, and due to the DOE's Implementation Unit withholding authorization for the IEEs until March 6, 2025, after the DOE's cross-appeal had passed, D.L. underwent an IEE in the aforementioned areas in April through May 2025.

65.    Sarah Tintle, physical therapist, conducted R.T.'s independent PT evaluation. Per the April 2, 2025, PT evaluation report, attached hereto as **Exhibit A**, Ms. Tintle noted R.T. struggled with coordination (i.e., hallway navigation and starting/stopping activities), demonstrated moderate balance impairments in his static and dynamic balance, and presented with overall low muscle tone and demonstrated mild to moderate decreased strength throughout his core and legs. Ms. Tintle wrote, "[R.T.] has been receiving [PT] services at [Gersh] for several years, despite a lack of [a PT] evaluation from the [DOE], because his current school (Gersh) recognized that his physical limitations were preventing him from fully accessing the school environment. Examples of such limitations include fatigue after running, challenges with higher level eye-hand coordination skills, and his underlying strength deficits." Ms. Tintle recommended, among other things, PT services one time per week for 30 minutes (individual).

66.    Marissa Elliott, occupational therapist, conducted R.T.'s independent OT evaluation. Per the April 21, 2025, OT evaluation report, attached hereto as **Exhibit B**, Ms. Elliott noted R.T. presented with significant delays in several areas of sensory processing and regulation, handwriting skills, fine motor precision skills, fine motor integration skills, manual dexterity skills, executive functioning skills, and self-care skills. Ms. Elliott opined R.T. continued to require school-based OT services and consistent support, guidance, redirection, and a systematic fading of prompts to develop the skills he lacks.

67.     Jenna Friedman, speech pathologist, conducted R.T.'s independent S/L evaluation. Per the April 29, 2025, S/L evaluation report, attached hereto as **Exhibit C**, Ms. Friedman noted profound global deficits in language and literacy, significantly impacting his ability to access academic content, participate in social interactions, and express himself effectively across settings. Ms. Friedman also noted that R.T.'s deficits are further compounded by emotional regulation challenges, which affect his ability to sustain attention and complete tasks independently. Ms. Friedman opined, "[R.T.] should continue to receive frequent, intensive speech-language therapy services at school on a pull-out basis, provided through individual and small group instruction, to address deficits in receptive language, expressive language, reading comprehension, written expression, and social-pragmatic communication skills. The program he currently attends at Gersh provides this level of integrated support, and I conclude it is appropriate from a speech and language perspective."

68.     Jenna Friedman, speech pathologist, also conducted R.T.'s independent AT evaluation. Per the April 29, 2025, AT evaluation report, attached hereto as **Exhibit D**, Ms. Friedman noted, based on the results of the evaluation, R.T. should receive AT support, noting "Assistive technology will provide [R.T.] with structured, engaging tools to support his expressive and receptive language development, foundational literacy skills, written expression, executive functioning, and classroom participation. The integration of appropriate technology will help [R.T.] access printed material, scaffold his comprehension through multimodal input, strengthen his ability to organize and express ideas and promote emotional regulation during academic tasks."

69.     Andrew Ng, Board Certified Behavior Analyst ("BCBA" and Licensed Behavior Analyst ("LBA"), conducted R.T.'s independent ABA skills assessment. Per the May 1, 2025, ABA skills assessment report, attached hereto as **Exhibit E**, Mr. Ng noted R.T. was a student who engaged in

task-avoidant behaviors when faced with work or non-preferred demands. Mr. Ng, who observed R.T. at Gersh, noted that when R.T. engaged in these task-avoidant behaviors at Gersh, "[R.T.] was eventually able to complete the tasks with some encouragement, and the situation did not escalate. When activities were presented clearly and concisely, [R.T.] remained most engaged and focused on the task at hand." Mr. Ng further noted, "[Gersh] implements various systems and strategies based on ABA principles to enhance academic and behavioral support in the classroom…Based on the school observations, the evaluator concludes that [Gersh] plays a crucial role in [R.T.'s] academic, social, and behavioral growth." Mr. Ng recommended, among other things, that R.T. continue to be placed in a full-time ABA school program with a 1:1 paraprofessional.

70.    Dr. Peter Piegari, psychologist, conducted the independent neuropsychological evaluation. Per the May 19, 2025, neuropsychological evaluation report, attached hereto as **Exhibit F**, Dr. Piegari noted R.T. became quickly distracted and irritable and became quickly distraught when faced with work he perceived as unwelcome or too difficult. R.T.'s Full Scale Intelligence Quotient ("IQ") was a 46 (less than the 0.1 percentile) and his academic skills ranged between the kindergarten to 2nd grade level. Dr. Piegari wrote, "Based on the findings of this evaluation, it is clear that [R.T.] needs 1:1 ABA instruction throughout the majority of the instructional day. He is currently incapable of incidental learning due to impairments in joint attention, receptive and pragmatic language, concentration as well as emotional and behavioral regulation. Assigning [R.T.] a 1:1 paraprofessional in a District #75 program is not the equivalent of his being taught by a teacher or assistant teacher trained in ABA and supervised by a BCBA…[R.T.] is appropriately placed at Gersh Academy. He needs to remain in a program for students with [autism] and related disabilities to receive an appropriate education. A small class (i.e., six to eight) with a very low

student to teacher ratio is necessary in light of his impairments in language and executive functions as well as social/emotional difficulties. [R.T.] needs a small class which provides 1:1 ABA instruction throughout the day with some periods of dyadic instruction. The ABA instruction needs to be supervised by a BCBA."

71.    Plaintiff D.L. emailed the completed IEE reports to the DOE between April 28, 2025, and May 19, 2025.

72.    The SRO's decision due date was April 3, 2025, 30 days following the DOE's March 4, 2025, "Verified Answer."

73.    The SRO did not timely issue a decision.

74.    On June 2, 2025, nearly two months following the SRO's due date for the decision, Plaintiff D.L., through counsel, called the SRO to inquire on the status of the past due SRO decision. The SRO stated the SRO had not yet to issued a decision, the SRO is not permitted to provide any estimated timeline on when the overdue decision will be issued, and the SRO is behind on rendering decisions.

75.    On August 19, 2025, 4.5 months after the SRO's decision due date, the SRO emailed the decision dated August 14, 2025, to Plaintiff, D.L., through counsel.

76.    The SRO, in the decision dated August 14, 2025, found:

a.    The IHO's award of an IEE at public expense has become final and binding on the parties and will not be reviewed on appeal.

b.    Plaintiff D.L. did not pursue specific claims on appeal that the IHO did not directly address in the January 5, 2025, Final Order, and the SRO deemed those claims abandoned.

c.      The DOE's failure to provide Plaintiff D.L. with a copy of the DOE's March 2024 psychoeducational evaluation report prior to the April 12, 2024, IEP meeting was a procedural violation that did not result in a denial of FAPE.

d.      Although the DOE did not conduct formal evaluations in the related services areas, the DOE had sufficient information from a variety of sources that informed the DOE's identification of the student's current needs and development of the Student's April 12, 2024, IEP.

e.      The SRO credited the DOE school psychologist's testimony, that the DOE did not include a specific methodology (i.e., ABA) on the IEP because "that decision is best left to the schools" and that the DOE school psychologist testified that there was not clinical data to support a need for ABA for R.T.

f.      There is insufficient grounds to disturb the IHO's determination that there was no clear evaluative consensus that R.T. required ABA.

g.      The DOE's witnesses did not give retrospective testimony that it would have provided additional services at the DOE's proposed public school, P.S. 209, beyond those listed in the April 12, 2024, IEP.

h.      The DOE satisfied its transportation obligations under the pendency agreement.

i.      Having found no basis to disturb the IHO's determination that the DOE offered the Student a FAPE for the 2024-2025 school year, there is no need to reach this issue of whether Gersh was an appropriate unilateral placement for the Student.

77.     In its decision, when discussing whether the DOE's proposed placement, P.S. 209, was appropriate for R.T., the SRO essentially shifted the burden on the Parent to show that P.S. 209

was inappropriate, stating the Parent could have called the individual who gave Plaintiff D.L. the tour of P.S. 209 to rebut the DOE's evidence.

78.     In its decision, the SRO did not even discuss, let alone address, Plaintiff D.L.'s argument that the court must assess the Parent's placement decisions for R.T. based solely on the information made

available to her by the DOE at the time of the placement decision (i.e., in July 2025) and, based on the information that the Parent obtained about P.S. 209 during her school tour, and as specifically stated in her June 21, 2024, TDN letter, if the DOE believed any of the information that the Parent obtained during her P.S. 209 was inaccurate or required clarification, it was required to contact the Parent within ten business days of her June 21, 2024, TDN letter to provide such information. Instead, the DOE did not respond to the Parent's TDN letter and sat on its hands until the hearing, in a clear "gotcha" tactic, to provide retrospective testimony purporting that the information the Parent obtained during her P.S. 209 school tour was not accurate.

79.     In its decision, the SRO incorrectly found the DOE's retrospective testimony simply explained or justified the services listed in the IEP, and was not impermissible and after-the fact testimony to rehabilitate the IEP.

80.     In its decision, the SRO largely declined to address the incredibility of DOE school psychologist, who failed to refute the information provided to the Parent by the DOE during the P.S. 209 school tour, but instead faulted the Parent for not calling the DOE staff member who gave her the tour.

81.     In its decision, the SRO did not address the appropriateness of Plaintiff D.L.'s unilateral placement, Gersh, for R.T. for the 2024-2025 school year.

82.     In its decision, the SRO did not address whether the equities weighed in favor of the Parent.

83.     In its decision, the SRO did not provide R.T. with any additional relief that the IHO did not already previously order in the January 5, 2025, FOFD.

**ADMINISTRATIVE REMEDIES**

84.     Plaintiff D.L. has exhausted her administrative remedies.

85.     The SRO's decision is neither well-reasoned nor otherwise entitled to deference.

86.     The IHO's decision is neither well-reasoned nor otherwise entitled to deference.

**ADDITIONAL EVIDENCE**

87.     Plaintiff D.L. respectfully requests the court consider additional evidence, attached hereto as Exhibit A though F, which are the April through May 2025 IEE reports, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii) ("In any action brought under this paragraph, the court…shall hear additional evidence at the request of the party…").

88.     The Parent could not have included these IEE reports as evidence in Impartial Hearing Case 283527 and/or SRO Appeal 25-097 due to the DOE's refusal to authorize funding for an IEE in response to the Parent's April 16, 2024, IEE request letter, thereby depriving the Parent and the members of the Committee on Special Education of this necessary information/evaluative information when developing R.T.'s program for the 2024-2025 school year.

89.     The Parent further could not have included these IEE reports as evidence in Impartial Hearing Case 283527 and/or SRO Appeal 25-097 due to the DOE's refusal to authorize funding for the IEE until March 6, 2025, after the Parent's SRO appeal period had passed.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

90.     Plaintiff D.L. repeats and realleges the facts set forth in each and every paragraph above.

91.     The Second Circuit has noted that:

> "the IDEA's pendency provision states that 'during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in [his or her] then-current educational placement.' 20 U.S.C. § 1415(j). That provision reflects Congress's decision that all disabled children should keep their existing educational program until any dispute over their placement is resolved. *See Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 160–61 (2d Cir.2004); *see also Honig v. Doe*, 484 U.S. 305, 323–25, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). It therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete. *Mackey*, 386 F.3d at 163."

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170-171 (2d Cir. 2014).

92.    The Second Circuit has noted that "the stay-put provision means that an educational agency is required to maintain the status quo placement even if the child would otherwise have no substantive right to it." *Doe v. E. Lynne Bd. of Educ.*, 790 F.3d 440, 453 (2d Cir. 2015).

93.    The November 8, 2023, FOFD in Case Number 251277 is the most recent un-appealed FOFD for R.T.

94.    The DOE did not appeal the FOFD in Case Number 251277.

95.    On August 26, 2024, in a signed pendency agreement, the DOE stipulated that pendency lied in the FOFD in Case Number 251277, which included Gersh tuition and specialized transportation for the twelve-month school year.

96.    The FOFD in Case Number 251277 constitutes R.T.'s last agreed upon placement.

97.    Thus, Plaintiff D.L. seeks an order the DOE fund pendency, finding that the pendency agreement between Plaintiff D.L. and the DOE dated August 26, 2024, is R.T.'s pendency placement.

**SECOND CAUSE OF ACTION**

98.    Plaintiff D.L. repeats and realleges the facts set forth in each and every paragraph above.

99.    The IHO erred in each of the ways listed at ¶ 57 above.

100.    Against the applicable burden of proof and the weight of the evidence, the SRO erred in replicating the IHO's errors.

101.    The SRO erred in finding claims, issues, or relief abandoned due to lack of specificity.

102.    The SRO erred in finding that DOE provided R.T. FAPE for the 2024-2025 school year.

103.    The SRO erred in not awarding any relief, including direct funding for Gersh tuition for the 2024-2025 school year.

104.    DOE denied R.T. a FAPE in that:

    a.    The DOE impeded the Parent's right to meaningfully participate in R.T.'s education.

    b.    The DOE failed to recommend an appropriate research-based method of instruction.

    c.    The DOE failed to conduct timely and comprehensive evaluations.

    d.    The DOE failed to respond to the IEE letter as required under the regulations.

    e.    The DOE failed to recommend and provide the Student with an appropriate placement.

    f.    The DOE failed to develop an appropriate educational program for the Student.

    g.    The DOE failed to recommend transitional support services for the Student.

105.    The IHO and SRO should have found that the DOE denied the Student a FAPE for the 2024-2025 school. As a result, the IHO and SRO failed to award R.T.'s tuition at Gersh for the 12-month 2024-2025 school year.

106.    Based upon the record evidence and absence of rebutting evidence on the IHO's points of concern, the IHO and SRO should have ordered DOE to fund placement at Gersh for R.T. for the 2024-2024 school year.

107.     Overall, the administrative decisions below misconstrue the record and applicable review standards and are contrary to law.

108.     Due to the erroneous administrative decisions, the IHO and SRO did not vindicate R.T.'s right to a FAPE and did not provide her and Plaintiff D.L. the relief to which they were entitled under the IDEA.

109.     Plaintiff D.L. and R.T. are entitled to relief as set forth below.

<strong><u>RELIEF REQUESTED</u></strong>

WHEREFORE, Plaintiff D.L., individually and on behalf of R.T., respectfully request that this Court:

(A)     Order that the pendency agreement between Plaintiff D.L. and the DOE dated August 26, 2024, remains in full force and effect, and forms the basis of R.T.'s pendency, until the outcome of this appeal.

(B)     Reverse the SRO's decision, except for the portion in which the SRO upheld the IHO's order for the DOE to fund an IEE at public expense.

(C)     Find and declare that DOE denied R.T. a FAPE for the 2024-2025 school year.

(D)     Find that Gersh is the appropriate placement for R.T. and that the equities favor the Parent.

(E)     Order the DOE to fund R.T.'s tuition directly to Gersh for the 12-month 2024-2025 school year, in total amount of $175,506 minus any payments already made by the Parent to Gersh such as the $100, and/or any payments made by the DOE under the pendency agreement.

(F)     Order the DOE to directly reimburse the Parent for any costs and/or expenses and/or any out-of-pocket payments made by the Parent including, but not limited to, any payments

made to Gersh, by the Parent, such as the $100 deposit, and any payments made by the Parent due to the DOE's failure to provide R.T. with the proper transportation, including, but not limited to any payments made to rideshare, taxi or public transportation.

(G)    Order such other and further relief as the court may deem equitable and just.

(H)    Award Plaintiff D.L. reasonable attorneys' fees, costs, and expenses pursuant to 20 U.S.C. § 1415(i)(3), including for Impartial Hearing Case 283527, SRO Appeal 25-097, and this action.

(I)    Grant such further and/or different relief as may be fair and just.

Dated:  December 12, 2025
        Auburn, NY                              Respectfully,

                                                s/ Joseph E Sulpizio
                                                CUDDY LAW FIRM, PLLC
                                                Joseph E Sulpizio, Esq.
                                                Attorneys for Plaintiff
                                                5693 South Street Road
                                                Auburn, New York 13021
                                                Tel.: (315) 370-4020
                                                jsulpizio@cuddylawfirm.com